**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| In re<br><br>**DEBORA KAREN FRATZKE,**<br><br>Debtor. | Case No. **15-60186-13** |
|---|---|

# *MEMORANDUM OF DECISION*

At Butte in said District this 10th day of August, 2015.

Pending in this Chapter 13 bankruptcy case is the Objection (Document No. 45) to Debtor's claim of homestead exemption filed on May 27, 2015, by Les Schwab Warehouse Center, Inc. ("Les Schwab"), on the grounds the Debtor's declaration of homestead on her residence and certain "Surrounding Property" is invalid because she did not abandon a prior-recorded homestead on her residence before recording a second homestead declaration which added approximately 103 acres of "Surrounding Property" which Debtor's spouse Ross Fratzke ("Ross") inherited. The Court held a hearing on Les Schwab's Objection at Missoula on July 9, 2015. Michael F. McGuiness of Patten, Peterman, Bekkedahl & Green, P.L.L.C, of Billings, Montana, represented Les Schwab. Daniel S. Morgan of Missoula, represented Debtor Debora Karen Fratzke ("Debora"), who appeared and testified. Debora's spouse Ross Fratzke ("Ross") also testified. The Court admitted Exhibits ("Ex.") 1, 2, 3, A, B, C, and D into evidence without objection. At Les Schwab's request the Court took judicial notice of two recorded homestead declarations and a deed. At the conclusion of the parties' cases-in-chief the Court took the Objection under advisement. After review of the record and applicable law, Les Schwab's Objection will be overruled by separate Order based upon Montana's liberal construction of

homestead exemption statutes.[1]

This Court has jurisdiction over this Chapter 13 bankruptcy case under 28 U.S.C. § 1334(a). Les Schwab's Objection to Debtor's claim of exemption from property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B). At issue is whether Debtor's homestead exemption is invalid for failure to record a declaration of abandonment of the first declaration of homestead pursuant to MONT. CODE ANN. ("MCA") § 70-32-302 before recording a second declaration of homestead adding the Surrounding Property. This Memorandum of Decision includes this Court's findings of fact and conclusions of law.

**FACTS AND PROCEDURAL HISTORY**

Debora and Ross Fratzke are married and reside on real property located in Sanders County, Montana. Since 2002 they have resided in a home on approximately 40 acres located at 171 Harlow Road in Thompson Falls, Montana, legally described as: "The South half of the Northeast quarter of the Southeast quarter (S1/2NE1/4SE1/4) and the North half of the Southeast quarter of the Southeast quarter (N1/2SE1/4SE1/4) of Section 36, Township 22 North, Range 30 West, PMM, Sanders County, Montana" (hereinafter referred to as the "Residence"). Ex. A. Ross testified that they acquired the 40 acres when his mother died of cancer as part of her estate planning.

On October 3, 2013, they recorded a declaration of homestead for the Residence. Ex. 1 is a certified copy of the first homestead declaration with the legal description of the Residence, stating that they are owner(s) and reside on the premises, and claim the Residence as a homestead

[1]The Constitution of the State of Montana, Article XIII, Section 5 provides: "Exemption laws. The legislature shall enact liberal homestead and exemption laws."

under MCA § 70-32-101.

Debora testified that Ross acquired approximately 103 acres of "Surrounding Property" around their Residence in December of 2013, but that they have used the Surrounding Property since 2002 for haying, logging and in an outfitting business to earn income to support and maintain their homestead. Ross testified that the two parcels are contiguous; the Surrounding Property always was intended to support the Residence. He testified that his grandfather let him use the Surrounding Property for logging, haying and outfitting, before Ross received title to it.

Ex. C and D are overhead images of the Residence, which is outlined in blue, surrounded on three sides by the Surrounding Property.[2] Debora testified that their home is built with logs from the Surrounding Property. Ross testified that: the only access to the Surrounding Property is through the Residence; the only fenceline is around the Surrounding Property; and the Residence gets its waterline from a well located on the Surrounding Property. A sawmill straddles the line between the Residence and Surrounding Property. Ross testified that they drag wood from the Surrounding Property to heat their Residence.

Ex. 2 is a "Personal Representative's Deed" from the estate of a decedent named Una May Brotherton, in which Ross and another co-personal representative conveyed to Ross as of April 1, 2014,[3] the Surrounding Property which is described on Ex. 2 and 3 as follows:

> The W1/2SE1/4, N1/2NE1/4SE1/4 and S1/2SE1/4SE1/4 of Section 36, Township 22 North, Range 30 West, M.P.M., Sanders County, Montana, EXCEPTING THEREFROM the portion heretofore conveyed by instrument recorded October 24, 1973 at Volume 77 of Deeds, Page 9, Sanders County records.

---

[2]The Surrounding Property is to the north, west, and south of the Residence plot.

[3]Ross signed the deed on March 6, 2014. Co-personal representative Richard Brotherton signed it on April 1, 2014. The deed was recorded on August 22, 2014. Ex. 2.

Ex. B is the cadastral record for the Surrounding Property and puts the total acreage at approximately 104 acres of irrigated land and forest. Although Debora is not on the deed for the Surrounding Property, when asked on direct examination if it was her husband's property she answered that it is "our property" and part of her Residence, and that they use the Surrounding Property "all the time" since they moved back in 2002. On cross examination she testified that the agreement to acquire the Surrounding Property required them to log it.

Debora testified that an entity called Flat Iron LLC, which was formed in December 2014 and of which the members are Debora, Ross, and George Lyons,[4] also uses the Surrounding Property for logging and haying. On redirect examination she repeated that she and Ross have always logged and hayed the Surrounding Property and testified that Flat Iron LLC also conducts logging and haying operations on the Surrounding Property. She explained that their hunting outfitter business, Flat Iron Outfitting, wanted to advertise to hunters and outfitters in the State of Idaho and that Idaho requires outfitters be organized as a legal entity, such as a LLC, in order to advertise in Idaho. Ross testified that the only reason they formed Flat Iron LLC was to satisfy Idaho's requirement of an LLC to advertise their outfitting business.

On March 18, 2015, Debora and Ross signed and recorded a second declaration of homestead, Ex. 3, at the Sanders County clerk and recorder. Ex. 3 includes the same legal description of the Residence as on Ex. 1 and, in addition, lists the above-quoted legal description of the Surrounding Property. Like Ex. 1, Ex. 3 is a certified copy of the second homestead declaration with the legal description of the Residence and Surrounding Property, stating that they are owner(s) of the premises, reside on the premises and claim both premises as a homestead

---

[4]Debora testified that Lyons does not reside in their Residence.

under MCA § 70-32-101. Debora testified that in Ex. 3 they claim the Residence and Surrounding Property as their family homestead.

Les Schwab's counsel asked both Debora and Ross to acknowledge that they maintained their homestead on the Residence before they acquired ownership of the Surrounding Property. Both answered that they used the Surrounding Property for logging, haying, water and for other purposes to support and maintain their Residence both before and after acquiring the Surrounding Property. This evidence is uncontroverted.

Asked on direct examination whether they recorded a declaration of abandonment of their first homestead before recording Ex. 3 Debora answered: "No, we didn't need to." Ross testified that: The personnel at the Sanders County Courthouse recommended that they record the second declaration of homestead; he and Debora followed the instructions of the courthouse personnel; and they were not told that they needed to record a declaration of abandonment of the first homestead.[5]

Ross and Deborah Fratzke filed a joint voluntary Chapter 13 petition on March 19, 2015. Ross moved to dismiss his case voluntarily on April 8, 2015 and his case was dismissed without objection on April 28, 2015. Deborah filed her Schedules and Statements on April 8, 2015.

Schedule C lists Deborah's homestead exemption described as "Residence located at 171 Harlow Rd., Thompson Falls, MT," followed by the parenthetical: "(Declaration of Homestead recorded on 3/18/15 in Sanders County)." That declaration, Ex. 3, includes the above-quoted legal descriptions of both the Residence and the Surrounding Property. Schedule A lists the

---

[5]This testimony clearly is hearsay as defined by Federal Rule of Evidence 801(c). However, Les Schwab's counsel did not object and did not move to strike it from the record.

value of the Residence at 171 Harlow Road (followed by the same parenthetical reference to Ex. 3 as on Schedule C) in the amount of $315,000, while Schedule C lists the amount of Debtor's exemption as $125,000. *See* MCA § 70-32-104(2).[6]

Schedule D lists a first and second mortgage against Debora's Residence and lists Les Schwab as a creditor holding a secured claim against Debora and Ross in the amount of $324,865.61, secured by a judgment lien on "[a]ll real property in Sanders County" with a stated value of $544,000.00. Les Schwab filed Proof of Claim No. 12 on June 12, 2015, asserting a claim in the total amount of $341,777.31, which includes a secured claim in the amount of $39,000 based on its judgment lien and the collateral described as the Residence at 171 Harlow Rd.

Les Schwab filed its Objection to the Debtor's claim of homestead exemption on May 27, 2015, both as to the Residence at 171 Harlow Rd. in Thompson Falls "and/or" to the Surrounding Property. Les Schwab objects that Deborah does not reside on the Surrounding Property and no residence exists on the Surrounding Property, which the Debtor and Ross use for agricultural and other commercial purposes. Additionally, Les Schwab objects on the grounds that the Debtor did not abandon the first declaration of homestead on her Residence, which was recorded on October 3, 2013, pursuant to MCA § 70-32-302, and that, thus, the second Declaration of Homestead, which includes the Residence and Surrounding Property is invalid.

Deborah filed a response to Les Schwab's Objection on June 11, 2015, opposing Les

---

[6]Section 70-32-104(1) states that a "homestead may not exceed $250,000 in value." Section 70-32-104(2) provides: "If a claimant who is an owner of an undivided interest in real property claims a homestead exemption, the claimant is limited to an exemption amount proportional to the claimant's undivided interest." Debora's claimed $125,000 homestead exemption appears to reflect this limitation.

Schwab's Objection based on the liberal construction of Montana's homestead statutes and arguing that Debora and Ross have utilized the Surrounding Property, which has been in his family for decades, "in ways common with residency and occupancy."

## DISCUSSION

### A. Burden of Proof.

Rule 4003(c), F.R.B.P., provides in pertinent part that "the objecting party has the burden of proving that the exemptions are not properly claimed." Under this Rule, and prior decisions of this Court, Les Schwab, as the objecting party, would have the burden of proof on the issue of whether Debora's claim of a homestead exemption is properly claimed. Recently, however, Rule 4003(c) has been criticized for inverting the burden of proof on exemptions from that provided under state law. *See In re Tallerico*, 532 B.R 774, 787 (Bankr. E.D. 2015). Hon. Christopher M. Klein, United States Bankruptcy Judge for the Eastern District of California, relying on the United States Supreme Court decision in *Raleigh v. Illinois Dep't of Revenue*, 530 U.S., 15, 20-21 (2000) (burden of proof is substantive, not procedural) and California statutes, which specifically place the burden of proof on exemptions on the party claiming the exemption, placed the burden of proof on the debtor claiming an exemption in bicycle parts and inventory and he concluded that the debtor failed the burden of proof. 523 B.R. at 791.

Assignment of the burden of proof was important in *Tallerico* because the debtor did not produce any records supporting his assertion of ownership of property he claimed as exempt. *Id.* By contrast, in the instant case the record includes certified copies of both recorded declarations of homestead, a deed, cadastral records for both properties in addition to the testimony of the Debtor and her spouse. This decision hinges not as much on the evidence in the record, which to

a large degree is uncontroverted, as it does on construction of Montana's homestead exemption statutes.[7]

**B. Homesteads.**

Debtor listed her homestead exemption in her Schedule C along with their other property claimed as exempt, pursuant to 11 U.S.C. § 522(b)(2) and F.R.B.P. 4003(a). The provision of § 522(b)(2)(A) in effect in this case applies state or local exemption law "that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition." Pursuant to § 522(b)(2), Montana has opted out of the federal exemption scheme by means of MCA § 31-2-106.[8] *In re Wright*, 525 B.R. 464, 471 (Bankr. D. Mont. 2015); *In re Moore*, 21 Mont. B.R. 255, 257 (Bankr. D. Mont. 2006). This Court thus looks to Montana state law rather than federal law

---

[7]In this context, it is not necessary for this Court to decide whether to continue to follow Rule 4003(c) and place the burden of proof on the objecting party or place the burden of proof on the party claiming the homestead exemption as in *Tallerico*. The Court notes that Montana's homestead statutes do not include specific provisions placing the burden of proof on the exemption claimant corresponding to the California Code of Civil Procedure provisions discussed in *Tallerico* and the Court did not find any statutory provision stating who has the burden. *But see* MCA § 25-13-212, which requires a judgment debtor to file a written request for a hearing and to submit a written statement establishing specific reasons why the property is exempt with accompanying documentation when disputing a judgment creditor's execution writ. *Raleigh* addresses the burden of proof for an objection to a proof of claim, but one may argue that "no principled difference exists between objections to § 502 claims and § 522 claims of exemptions." *In re Tallerico*, 532 B.R. at 787.

[8]Section 31-2-106 provides in pertinent part: "**Exempt Property – bankruptcy proceeding**: An individual may not exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. § 522(d). An individual may exempt from the property of the estate in any bankruptcy proceeding: (1) that property exempt from execution of judgment as provided in . . . Title 70, chapter 32, . . . ."

to determine the allowance of the Debtor's claimed homestead exemption.[9] *In re Wright,* 525 B.R. at 471; *In re Moore*, 21 Mont. B.R. at 257; *In re Loeb*, 12 Mont. B.R. 524, 527 (Bankr. D. Mont. 1993).

Under Montana law, homestead and exemption statutes must be liberally construed in favor of debtors. Constitution of the State of Montana, Article XIII, Section 5; *In re Wright,* 525 B.R. at 471; *In re Moore*, 21 Mont. B.R. at 257-58; *MacDonald v. Mercill* (1986), 220 Mont. 146, 714 P.2d 132, 135; *De Fontenay v. Childs* (1933), 93 Mont. 480, 485, 19 P.2d 650, 651. This Court summarized the liberal policy underlying construction of Montana's homestead exemption in *In re Burnett*, 17 Mont. B.R. 509, 516 (Bankr. D. Mont. 1999):

> Montana's Constitution and case law require that the homestead be liberally construed in favor of the claimant. Constitution of the State of Montana, Article XIII, section 5; *In re Mackenzie*, 16 Mont. B.R. 338, 343 (Bankr. [D.] Mont. 1998); *Neel v. First Fed. Sav. and Loan Assoc. of Great Falls*, 207 Mont. 376, 383, 675 P.2d 96, 100 (1984); *Oregon Mortgage Co. v. Dunbar*, 87 Mont. 603, 289 P. 559 (Mont. 1930); *Glass v. Hitt (In re Glass)*, 60 F.3d 656, 570 (9th Cir. 1995).

In the context of a Chapter 13 bankruptcy, the allowance or disallowance of an exemption can affect the amount a debtor must contribute to his or her Chapter 13 plan. As explained by a leading bankruptcy commentator:

A fundamental component of an individual debtor's fresh start in bankruptcy is

---

[9] Without citation, Debtor's attorney referred to a bankruptcy case involving Bonnie Snavely in which, he argued, she lost a homestead exemption based on Washington law requiring abandonment of a homestead. The *Snavely* decision is an unpublished decision reported at *In re Snavely*, 2010 WL 6259761 (9th Cir. BAP 2010). The BAP affirmed a bankruptcy court's voiding of a declaration of homestead on cabins located at Lake McDonald in Montana, because Snavely's assertion of residence on the property was not credible. *Id.* at *6. *Snavely* was decided under Washington state statutes because Snavely resided in Washington and filed her petition there. Les Schwab's Objection cites no case law, but its counsel referred to Idaho bankruptcy court decisions at the hearing.

> the debtor's ability to set aside certain property as exempt from the claims of creditors. Exemptions of property, together with the discharge of claims, lets the debtor maintain an appropriate standard of living as he or she goes forward in the bankruptcy case.

4 COLLIER ON BANKRUPTCY ¶ 522.01, p. 522-14 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2011); *In re Wright*, 525 B.R. at 472.

MCA § 72-32-101provides that a "homestead consists of the dwelling house or mobile home, and all appurtenances, in which the claimant resides and the land, if any, on which the same is situated, selected as provided in this chapter." By way of limitation, MCA § 70-32-104(1) provides that a "homestead may not exceed $250,000 in value." MCA § 70-32-104; *In re Moore*, 21 Mont. B.R. at 257-58. Debora's Schedule C claims a homestead exemption in the amount of $125,000, which is one-half of the $250,000 limit and appears to be done to comply with the proportional limit of MCA § 70-32-104(2) since she owns the Residence jointly with Ross. Ex. 1, A.

While Les Schwab objects to Debora's claim of exemption in the Surrounding Property, the Court notes that her Schedule C specifically claims a homestead exemption only in the Residence at 171 Harlow Rd. The Surrounding Property is not named or described on Schedule C, except by means of inference from the parenthetical reference to the second homestead declaration. While Ex. 3 includes the legal description of the Surrounding Property, it also includes the legal description of the Residence. In short, it is not clear to the Court that Debora is claiming an exemption in the Surrounding Property in her Schedule C at all, although she testified that she considers the Surrounding Property to be hers and part of her homestead. Further, a determination of those interests is beyond the scope of this contested matter.

In *Dunbar* the homestead declaration included 10 acres which the defendant did not own, and the court wrote that the homestead claimed on the 10 acres not owned by defendant "is subject to attack." 289 P. at 560. Les Schwab did not object to Debora's claim of exemption in the Surrounding Property on the ground that she does not have an ownership interest in the Surrounding Property. If it had objected on that ground, a proceeding to determine the validity, priority, or extent of a lien or other interest in property requires an adversary proceeding, other than a proceeding under Rule 4003(d) to avoid a lien or other transfer of exempt property. FRBP 7001(2). Les Schwab's Objection to Debora's claim of homestead exemption is not a proceeding to avoid a lien or other transfer of exempt property. Ross is not a party to Les Schwab's Objection, although admittedly he appeared and testified at the hearing. As a result, a determination of Ross's and Debora's respective interests in the Surrounding Property, or the extent which her $125,000 homestead exemption is attributable between the two properties, is not before this Court in a procedurally proper manner; this Court will not decide Debora's respective interest in the Surrounding Property[10] or the amount of her homestead exemption attributable to each property.

The Residence has a separate and different legal description from the Surrounding Property, both of which are found in Ex. 3. Schedule C states a homestead exemption in the Residence located at 171 Harlow Rd. in an amount proportional to her undivided interest in the Residence, as required by MCA § 70-32-104(2). Ex. 1 and 3 each were recorded and the

---

[10]Other than Debora's testimony that the Surrounding Property is hers, which is inconsistent with Ex. 2, it is not clear from Schedules A and C whether the Surrounding Property is property of the estate at all under 11 U.S.C. § 541(a), or that this Court has jurisdiction over the Surrounding Property or the non-debtor spouse Ross.

contents selected in satisfaction of MCA §§ 70-32-106 (Contents of Declaration) and 70-32-107. "A substantial compliance with the statute is sufficient and technical objections will not defeat an exemption claim." *See Neel*, 207 Mont. at 382, 675 P.2d at 100.

In construing statutory homestead language, this Court wrote in *Burnett*:

> This Court's role in construing Montana statutes is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . ." Mont. Code Ann. § 1-2-101; *See Siuru v. Sell,* 108 Mont. at 444, 91 P.2d at 413-14. The intention of the legislature is to be pursued. Mont. Code Ann. § 1-1-102. Courts do so by interpreting the plain meaning of the words used by the legislature in the statute. *Clarke v. Massey*, 271 Mont. 412, 416, 897 P.2d 1085, 1088 (1995). Where the language is clear and unambiguous, the statute speaks for itself and the Court will not resort to other means of interpretation. *Id.*; *State v. Zabawa*, 279 Mont. 307, 313, 928 P.2d 151, 155 (1996).

17 Mont. B.R. at 516.

Debora's parenthetical reference to the second declaration of homestead on Schedule C was not improper, since it gives the reader guidance about where to find the recorded declaration of homestead for the Residence. More importantly, it was not improper for Ex. 3 to include the Surrounding Property owned solely, according to Ex. 2, by Ross. MCA § 70-32-103 provides in pertinent part: "**From whose property homestead may be selected.** If the claimant is married, the homestead may be selected from the property of either spouse." This statute authorized Debora and Ross to select their homestead from the property of either of them, or both. They included in Ex. 3 their jointly owned Residence and Ross's Surrounding Property as authorized by MCA § 70-32-103.

Turning to their use of the Surrounding Property, *Neel* articulated the general intent of the homestead exemption scheme, stating that "[t]he purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the

family; the greatest incentive to virtue, honor and industry." *Neel*, 207 Mont. at 387, 675 P.2d at 102; *Earls v. Chase Bank of Tex., N.A.*, 2002 MT 249, ¶ 23, 312 Mont. 147, 154, ¶ 23 59 P.3d 364, 368 ¶ 23. This language clearly contemplates a financial utility to the homestead which is reflected in the history of the homestead legislation and supports Debtor's claim of homestead exemption in the Residence.

With such guidance the Court turns to Les Schwab's Objection that Debora does not reside on the Surrounding Property and uses it for agricultural and commercial purposes. At the time of *Dunbar* and *De Fontenay*, the homestead statutory provisions included an acreage limitation and required that the land selected be used for agricultural purposes. *See De Fontenay*, 93 Mont. at 485, 19 P.2d at 651. Those requirements were deleted by subsequent amendments, and now do not defeat Debtor's homestead exemption claimed in commercial property.

The Court observed both Debora's and Ross's demeanor while each testified under oath about their uses and need for the Surrounding Property; the Court finds that they both were credible witnesses. *In re Taylor*, 514 F.2d 1370, 1373-74 (9th Cir. 1975); *See also Casey v. Kasal*, 223 B.R. 879, 886 (E.D. Pa. 1998). The Surrounding Property provided the logs they used to build their Residence and provides their Residence with water, wood for heating, fencing, and income from haying, logging and their outfitting business to support their homestead, both before Ross owned the Surrounding Property and to the present. The Surrounding Property provides the means "to secure a home beyond the reach of financial misfortune" for Debora's Residence by providing fuel, water and income. *See Neel*, 207 Mont. at 387, 675 P.2d at 102.

In *Moore,* this Court construed *Dunbar* and concluded that Montana's current homestead laws do not appear to prohibit debtors from claiming a homestead exemption in multiple parcels

of property provided the claimed exemption does not exceed the statutory limitations and provided the allowance of the exemption furthers the purpose of the homestead laws. *In re Moore*, 21 Mont. B.R. at 258-59. The Court agreed that "a debtor may be entitled to claim a homestead exemption on multiple parcels of property if the debtor adequately demonstrates that the parcels appurtenant to the dwelling are in fact utilized by the debtor indiscriminately for the purpose of maintaining the homestead." *In re Moore*, 21 Mont. B.R. at 259-60. The purpose of the homestead exemption is to preserve the home and those adjacent appurtenances essential to its continued enjoyment. *In re Schriock*, 192 B.R. 514, 515 (Bankr. D. N.D. 1995). "This concept should not be understood in terms of acreage or boundaries but rather in terms of how the adjacent land is used and how it contributes to, or preserves the enjoyment of the home." *Id.*

In *Moore*, the Court sustained the Trustee's objection to a homestead exemption in a separate 20 acre parcel because no showing existed of an apparent relationship or interdependency between it and the 30 acre homestead parcel or that the 20 acre parcel was necessary for the debtor's continued enjoyment of his home. *In re Moore*, 21 Mont. B.R. at 260. In the instant case, by contrast, the evidence is uncontroverted that Debora and Ross have used the Surrounding Property for years for building logs, fuel, and water and to generate money to maintain their homestead on the Residence, from long before Ross acquired the Surrounding Property from his family.

In 2014, this Court concluded that an adjacent parcel was necessary for a debtor's continued enjoyment of his home because of its interdependency for purposes of parking, storage and dog kennels. *In re Wright*, 525 B.R. at 473. The evidence in the instant case shows a similar interdependency, because the Surrounding Property provides the Residence with heating fuel,

water and income to maintain the homestead. Further interdependence is shown by the evidence of a sawmill which straddles the property line.

In sum, based upon the language of MCA §§ 70-32-101, 70-32-103, 70-32-104, and 70-32-106, and under the liberal construction of those statutes under the Montana Constitution, this Court finds and concludes that Debora's claim of homestead exemption in her Residence located at 171 Harlow Rd. in Thompson Falls is properly claimed, by a preponderance of the evidence.

**C. Abandonment.**

Les Schwab objects to Debtor's homestead on the grounds the first declaration of homestead, Ex. 1, was not abandoned prior to recording the second declaration of homestead adding the Surrounding Property, Ex. 2. MCA § 70-32-302 provides: "How abandoned – declaration. A homestead can be abandoned only by a declaration of abandonment or a grant thereof executed and acknowledged by: (1) the husband and wife if the claimant is married; (2) the claimant if unmarried."

Les Schwab's Objection cites no case law, but at the hearing its counsel referred to Idaho decisions which apparently hold that failure to record an abandonment of a homestead defeats a later-recorded homestead. Whatever Idaho's statutes provide, Chapter 32 of Title 70, MCA, does not include a provision which requires that a homestead be abandoned before a subsequent declaration of homestead may be recorded. If the Montana legislature wanted such a requirement it could have enacted one like the Idaho provision referred to by Les Schwab's counsel. The Montana legislature has not enacted such a provision and, under the liberal construction of Montana's exemption statutes, this Court will not infer one.

However, even if such a statutory requirement existed, Ex. 3 does not reflect or constitute

evidence that Debora intended to abandon her homestead exemption in her Residence. Ex. 3 includes the same legal description of her Residence as on Ex. 1, but added the legal description of the Surrounding Property which the evidence shows her spouse owns. MCA § 70-32-103 authorizes them to select their homestead from the property of either of them, which they did on Ex. 3. Debora claimed the same Residence as a homestead as described on Ex. 1, Ex. 3 and her Schedule C. Debora and Ross added to their homestead by recording Ex. 3. Most importantly, no evidence exists that Debora abandoned the homestead at Residence claimed on Ex. 1. She and Ross have lived in the Residence since 2002 and continue to live in the Residence. Therefore, no declaration of abandonment of the Residence was required,[11] and Les Schwab's objection based on failure to record a declaration of abandonment is not well taken.

**CONCLUSIONS OF LAW**

1. This Court has jurisdiction over this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a).

2. Les Schwab's Objection to exemption is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

3. The Debtor satisfied the requirements of Title 70, Chapter 32, MCA, for establishing a homestead.

4. The Debtor did not intend to abandon her homestead exemption claimed on her Residence and, thus, no declaration of abandonment of a prior-recorded homestead was required

---

[11]This decision does not cover the situation where a claimant moves and claims a new homestead on a different property. The fact that the second homestead declaration, Ex. 3, included the Residence described in the first declaration, Ex. 1, explains the advice given to Ross and Debora by Sanders County personnel.

before recording a new declaration of homestead adding additional property from property of Debtor's spouse.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above, overruling Les Schwab's Objection to Debtor's claim of homestead exemption, filed May 27, 2015.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge